UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CAMERON OMARI VINCENT,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN REYES, *et al.*,<br><br>Defendants. | Case No. 19-cv-00329-RMI<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 45 |

Now pending before the court is a motion for summary judgment (dkt. 45) on Plaintiff's Second Amended Complaint (dkt. 27) filed by Defendants the City and County of San Francisco, and San Francisco Sheriff's Deputies Jonathan Reyes and Kyle Tauscher. The court finds this matter to be suitable for disposition without oral argument under Civ. Local R. 7-1(b). For the reasons stated below, Defendants' motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

On October 10, 2018, Plaintiff was a detainee in Defendants' custody while awaiting trial on certain charges. *See* Second Amend. Compl. ("SAC") (dkt. 27) at 3. On that day, he was scheduled to be transported by Defendants Tauscher and Reyes from the jailhouse to the courthouse. *Id*. When Defendants Reyes and Tauscher were placing Plaintiff into a transport van, they bound him with leg restraints and handcuffs and placed him in one of the two makeshift jail cells in the back of the transport van, neither of which were equipped with seatbelts. *Id*. at 3; *see also* Defs.' Mot. (dkt. 45) at 9. Upon seeing the condition inside the transport van, Plaintiff made several requests for Defendants to use a seat belt; however, he was told not to worry about a seatbelt, and Defendant Tauscher reportedly told Plaintiff that he did not care about his safety

while threatening him that, "one way or another," he was going to get in that van, "or else." *See* Pl.'s Opp. (dkt. 46) at 6 (citing Pl.'s Decl. (dkt. 46-2) at 2-3; and, Pl.'s Deposition Excerpts (dkt. 46-1) at 3, 4). Perceiving Defendant Tauscher's "or else" admonishment as a threat, Plaintiff entered the van (*see* Pl.'s Decl. (dkt. 46-2) at 3) whereupon the Officer-Defendants placed him in the makeshift cell that was closer to the driver's compartment (*see* Defs.' Mot. (dkt. 45) at 9). At this point, Plaintiff was still manacled and bound in leg restraints when the van left the jailhouse on its journey to the courthouse with Defendant Tauscher driving and Defendant Reyes occupying the front passenger seat. *See id.*; *see also* Pl.'s Decl. (dkt. 46-2) at 2.

Once the transport van exited the parking facility of the jailhouse, Defendant Tauscher accelerated aggressively (or, as Plaintiff put it, "the van accelerated at a very high rate of speed") which caused Plaintiff to slide backwards in his seat until his body crashed into the side of the jail cell within the van, causing him to suffer a back injury. *Id.* at 3. When the van reached the red light at the next intersection, Defendant Tauscher "abruptly stepped on the brakes" with sufficient force to cause Plaintiff to "slide uncontrollably with force into [the] holding cage" in a manner that caused additional injuries to his shoulder and back. *Id.* When the traffic light turned green, Defendant Tauscher once again accelerated aggressively – "at a very high rate of speed" – which, in turn, caused Plaintiff to slide backwards in his seat until he crashed into the back of the holding cage in which he was confined, causing further injury to his back and shoulder. *Id.* Upon approaching the red light at the next intersection "at a high rate of speed," Defendant Tauscher came dangerously close to colliding with a vehicle directly in front of the van, and once again abruptly stepped on the breaks, which in turn sent Plaintiff "slid[ing] uncontrollably with force into the holding cage," causing further injuries to his head and shoulder. *Id.* Plaintiff alleges that Defendant Tauscher purposely "drove the van very recklessly [] [while] repeatedly speeding and abruptly stepping on his brakes" in order to cause Plaintiff injury due to having challenged him regarding a desire to be transported in a van with seatbelts. *Id.* Shortly thereafter, James Stephens side-swiped the transport van, the impact of which sent Plaintiff flying "with great force" into the side of the holding cage and causing still further injuries to his head, back, and ankles. *Id.* at 4; *see*

*also* Defs.' Mot. (dkt. 45 at 10).[1] Because Plaintiff's hands and feet were bound, but because he was not restrained in his seat with any seatbelt, and because he was rendered incapable of bracing himself or otherwise protecting his body, the above-described impacts caused Plaintiff a series of injuries. *See* Pl.'s Decl. (dkt. 46-2) at 4; Pl.'s Opp. (dkt. 46) at 6-7; *see also* Pl.'s Deposition Excerpts (dkt. 46-1) at 4-6. As result of the combined effects of the injuries that Plaintiff suffered when being bounced around the inside of this transport van while his hands and feet were bound, he was immediately transported by ambulance to the hospital for medical treatment. *See* SAC (dkt. 27) at 4. Thereafter, Plaintiff timely filed an administrative claim for compensation pursuant to California Government Code § 910, *et seq.*, which was rejected by the City and County of San Francisco on December 3, 2018. *Id*. The instant lawsuit followed.

Plaintiff's SAC raises three claims. In Claim-1, invoking 42 U.S.C. § 1983, Plaintiff complains of a violation of his Fourteenth Amendment rights "in that Defendants knew of the dangerous condition that he was placed in by the Defendants not securing him in a seatbelt and driving in a reckless manner, knew of the risk of danger those conditions posed, and failed to take any corrective action to remedy those conditions." *See* SAC (dkt. 27) at 4. As to the City and County of San Francisco's involvement, Plaintiff notes only that the above-discussed violation of his rights "occurred as the result of the deliberate, reckless, and malicious acts, omissions, and practices of the City and County of San Francisco Sheriff's Department . . . [because] the City has sanctioned and ratified its sheriff's deputies' actions to engage in the deliberate indifference to Plaintiff's constitutional rights, including in this case; failed to train and supervise its deputies properly to ensure they transport pre-trial detainees [safely] under the color of the law; and acted with deliberate indifference in failing to properly train its deputies or to adopt policies necessary to prevent such constitutional violations." *Id*. at 5. In Claim-2, Plaintiff presents a state-law negligence claim against Defendants Tauscher and Reyes, against twenty-five unnamed Doe Defendants, and a vicarious liability claim against the City and County of San Francisco pursuant to California Government Code § 815.2. *Id*. at 5-6. Pursuant to Claim-2, Plaintiff also seeks

---

[1] James Stevens was a cross-defendant and counter-claimant in this case.

1   declaratory and injunctive relief. *Id*. at 6. In Claim-3, Plaintiff presents a state-law negligence
2   claim against Defendant Stephens, contending that the negligent operation of his automobile
3   proximately caused Plaintiff to suffer injuries due to Defendant Stephens side-swiping the
4   transport van. *Id*. at 6-7. However, on August 17, 2020, Defendant Stephens reached a settlement
5   with Plaintiff, to which the other Defendants had no objection, and which was approved by the
6   court on September 10, 2020. *See* Motion for Settlement (dkt. 48); and, Order Approving
7   Settlement (dkt. 50).

## SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is proper if the pleadings and evidence in the record "show that there is no genuine issue as to any material fact," and thus, that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment must shoulder the initial burden of identifying the portions of the pleadings and record evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In this context, facts are considered "material" when they are such as might affect the outcome of the case; issues are "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party; and, a dispute is "material" when it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248-49 (1986).

In the summary judgment context, the movant bears the burden to produce evidence negating an essential element of each claim on which they seek judgment, or, at least the burden to make a showing that the non-moving party cannot produce evidence sufficient to satisfy their burden of proof at trial. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant meets that burden, the non-moving party may defeat summary judgment by showing, through admissible evidence, that a material factual dispute exists. *See California v. Campbell*. 138 F.3d 772, 780 (9th Cir. 1998). When deciding a summary judgment motion, courts view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in their favor. *See Anderson*, 477 U.S. at 255; *see also Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). Summary judgment is generally inappropriate when

1  credibility is at issue. *SEC v. M & A West. Inc.*, 538 F.3d 1043, 1055 (9th Cir. 2008). Therefore,
2  "[w]here [material] facts are disputed, their resolution and determinations of credibility 'are
3  manifestly the province of a jury.'" *Wall v. County of Orange*, 364 F.3d 1107, 1110-11 (9th Cir.
4  2004) (quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002)).

## DISCUSSION

Defendants move for summary judgment on Calim-1 (Plaintiff's Fourteenth Amendment deliberate indifference claim) and Claim-2 (the state-law negligence claim). *See* Defs.' Mot. (dkt. 45) at 12-19. Additionally, Defendants Tauscher and Reyes argue that they are entitled to qualified immunity with respect to Claim-1. *Id*. 15-16. As to the deliberate indifference claim, Defendants' primary argument is that Claim-1 fails because "there is no [c]onstitutional right to a seatbelt and the undisputed evidence shows that the [d]eputies did not act with reckless disregard to Plaintiff's safety." *See* Defs.'s Mot. (dkt. 45) at 12-15. While Defendants repeatedly state that "[t]he undisputed facts of this case show that [d]eputies acted reasonably and upheld their duty to transport Plaintiff safely," as well as contending that "the undisputed evidence shows that [Defendant] Tauscher drove appropriately in the two and a half blocks prior to the accident," the court disagrees. It is true that the California Vehicle Code exempts authorized emergency vehicles operated by public employees from the statutory seat belt requirements (*see* Cal. Vehicle Code § 27315(g)); further, it is also true that the court is unaware of any authority establishing any constitutional right to be secured in a seatbelt while being transported to court in California in an authorized emergency vehicle operated by public employees. However, Defendants are incorrect in suggesting that it is undisputed that Defendant Tauscher either drove appropriately, or that he upheld his duty to transport Plaintiff safely during the portion of the journey leading up to the accident that was reportedly caused by Defendant Stephens. In fact, this is the very essence of the parties' dispute. As described above, Plaintiff's sworn declaration and his sworn deposition testimony constitute evidence that Defendant Tauscher recklessly operated the transport van by aggressively and unnecessarily applying excessive throttle and braking in such a manner as to cause Plaintiff to be thrown into the various interior surfaces of the makeshift holding cell in which he was confined while at the same time being unable to brace himself or break his falls due

5

to being manacled and shackled but not restrained by a seatbelt. While, Defendant Tauscher's account paints a somewhat different picture, the weighing of these competing accounts – essentially a question of credibility – essentially frames material "facts [that] are disputed, [and] their resolution and determinations of credibility 'are manifestly the province of a jury.'" *Wall*, 364 F.3d at 1110-11 (9th Cir. 2004) (quoting *Santos*, 287 F.3d at 852).

Generally speaking, in order to prevail on a § 1983 claim against individual officers, a plaintiff must show that the officer, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, officers sued in an individual capacity may assert a defense based on qualified immunity, which would preclude their liability in cases where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions, (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although the ultimate burden is upon Plaintiff to show that the constitutional right was clearly established, on summary judgment the court must resolve all factual disputes and draw all reasonable inferences in his favor. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1110 (9th Cir. 2011). "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citation omitted).

Here, Claim-1 rests on dual foundations: (1) the allegation that Defendants failed to arrange for Plaintiff's transport between the jailhouse and courthouse in a vehicle with seatbelts, and (2) the allegation that Defendant Tauscher, angered by Plaintiff's insistence on a seatbelt, purposely operated the throttle and brake pedals in a manner that caused Plaintiff to suffer injuries due to being bounced around the interior of the transport van like a pinball. Accordingly, these

1   allegations can support both a failure-to-protect claim, and an excessive force claim. A pretrial
2   detainee's Fourteenth Amendment failure-to-protect claim against individually sued officers
3   requires a showing that: (1) the defendant(s) made an intentional decision with respect to the
4   conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at
5   substantial risk of suffering serious harm; (3) the defendant(s) did not take reasonable available
6   measures to abate that risk, even though a reasonable officer in the circumstances would have
7   appreciated the high degree of risk involved—making the consequences of the defendants'
8   conduct obvious; and, (4) by not taking such measures, the defendant(s) caused the plaintiff's
9   injuries. *See Castro v. County of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016). Further, regarding the
10  third element, a defendant's conduct must be objectively unreasonable, a test that will necessarily
11  "turn[] on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley v.
12  Hendrickson*, 576 U.S. 389, 397 (2015), quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).
13  As to excessive force claims, while the Supreme Court has generally "limited liability for
14  excessive force to situations in which the use of force was the result of an intentional and knowing
15  act," the Court has expressly also left "open the possibility of including a 'reckless' act as well . . .
16  [but that] an officer enjoys qualified immunity and is not liable for excessive force unless he has
17  violated a 'clearly established' right, such that 'it would [have been] clear to a reasonable officer
18  that his conduct was unlawful in the situation he confronted.'" *Kingsley*, 576 U.S. at 400 (quoting
19  *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

20        To determine whether a right was clearly established, this court will look to Supreme Court
21  and Ninth Circuit jurisprudence existing at the time of the alleged act. *See Osolinski v. Kane*, 92
22  F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the court will look to other
23  circuit court and district court decisions to ascertain if the law is clearly established. *Id.*; *see also
24  Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989), *cert. denied*, 493 U.S. 1057 (1990) (a court
25  could also evaluate the likelihood that this circuit or the Supreme Court would have reached the
26  same result); *Allen v. Sakai*, 48 F.3d 1082, 1089 (9th Cir. 1994) ("In the absence of preexisting
27  binding precedent within this circuit, this court looks at all available decisional law including
28  decisions . . . of other circuits to determine whether a plaintiff has shown that the illegality of a

defendant's conduct should have been apparent when it occurred."); *see also Desfosses v. Keller*, 667 F. Supp. 2d 1210, 1216 (D. Idaho 2009) (same).

Viewed in the light most favorable to Plaintiff, the allegations concerning Defendant Tauscher's reportedly reckless operation of the transport van – such that Plaintiff was repeatedly buffeted against the various interior surfaces of the transport van – clearly create triable issues on a Fourteenth Amendment failure-to-protect claim, as well as an excessive force claim. Plaintiff has alleged that he expressed concerns for his safety with respect to being transported in a makeshift jail cell in the cargo area of a van with no seatbelts, while his hands and feet were bound and he was rendered incapable of protecting or bracing himself. Plaintiff has also alleged that Defendant Tauscher specifically told him that he did not care about his safety. *See* Pl.'s Deposition Excerpts (dkt. 46-1) at 4. Further, Plaintiff has also alleged that Defendant Tauscher's anger at Plaintiff's expression of concern for his safety during transport was the retaliatory motivation for the deputy's reportedly aggressive and reckless driving.

There is no question that it was clearly established that subjecting inmates to unreasonable and substantial risks of harm of the sort involved in this case constituted a constitutional violation. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("Accordingly, we . . . hold that a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *see also Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008) (denying qualified immunity because the court concluded that an officer "had 'fair warning' that driving recklessly while transporting a shackled inmate who had been denied the use of a seatbelt and ignoring requests to slow down violated the constitutional prohibition against cruel and unusual punishment."); *see also Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) ("Rogers alleged that he sustained a serious injury because Jose Garcia operated the prison van recklessly, knowing that there was a substantial risk that Rogers would be injured if the van stopped abruptly because Rogers was shackled in leg irons and handcuffs and was not provided with a seatbelt. Rogers's allegation that Jose Garcia told another officer that other inmates similarly had been injured the prior week and during other incidents . . . states more than mere

negligence. Garcia's alleged statement, if true, is sufficient to demonstrate that he knew of the risk to Rogers . . . In the light of these distinctions, Rogers has a nonfrivolous argument that Jose Garcia violated his Eighth Amendment right to freedom from cruel and unusual punishment by acting with deliberate indifference to his safety.").

Thus, while *Brown* and *Rogers* involved fundamentally similar facts to the instant case and while both cases made it clear that the rights Plaintiff alleges to have been violated were quite clearly established; the court feels compelled to note that even in the absence of these cases, the allegations at the heart of this case fall outside the realm for which qualified immunity exists. This is so because it is "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances . . . [because while] earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In short, the court finds that any reasonable officer would know that injury will be a virtual certainty if the officer chooses to aggressively operate the throttle and brake pedals while transporting a manacled and shackled passenger who is jailed inside a cargo van with no seatbelts. Assuming that Plaintiff's allegations are true (a required assumption in the summary judgment context), the court finds that no reasonable officer in Defendant Tauscher's position could have conceivably believed that the alleged conduct involved in this case was lawful; thus, qualified immunity is inappropriate under the circumstances. Accordingly, summary judgment for Claim-1 is **DENIED** as to Defendant Tauscher. However, it is undisputed that Defendant Reyes was merely a passenger in the van. *See* Pl.'s Deposition Excerpts (dkt. 46-1) at 3-5. Since Plaintiff has not alleged any duty, or even an ability, on Defendant Reyes's part to intervene or influence the manner in which Defendant Tauscher was operating the throttle and brake pedals on the day in question, the court finds that there are no genuine issues of material fact under Claim-1 as to Defendant Reyes. Therefore, because he is entitled to judgment as a matter of law, summary judgment is **GRANTED** as to Defendant Reyes for Claim-1.

Plaintiff's SAC also directs Claim-1 against the City and County of San Francisco (*see* SAC (dkt. 27) at 4-5), however, as noted by Defendants (*see* Defs.' Reply (dkt. 47) at 6), "Plaintiff

does not oppose Defendants' motion as to his *Monell* claim." *See generally* Pl.'s Opp. (dkt. 46) at 2-10. Furthermore, as recited above, Plaintiff's SAC only presents a series of conclusory and threadbare assertions in support of municipal liability by merely noting that the violation of his rights "occurred as the result of the deliberate, reckless, and malicious acts, omissions, and practices of the City and County of San Francisco Sheriff's Department . . . [because] the City has sanctioned and ratified its sheriff's deputies' actions to engage in the deliberate indifference to Plaintiff's constitutional rights, including in this case; failed to train and supervise its deputies properly to ensure they transport pre-trial detainees [safely] under the color of the law; and acted with deliberate indifference in failing to properly train its deputies or to adopt policies necessary to prevent such constitutional violations." *See* SAC (dkt. 27) at 5.

In *Monell v. Dep't of Social Servs.*, the Supreme Court held that local governments are "persons" for § 1983's purposes and are therefore also subject to liability for damages where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." 436 U.S. 658, 691 (1978). Although a municipality may not be held vicariously liable as a matter of course under § 1983 for the unconstitutional acts of its employees under the doctrine of *respondeat superior*, it may be held liable under *Monell* when a municipal policy or custom causes an employee to violate another's constitutional right. *See Monell*, 436 U.S. at 691-92. In order to hold a municipality liable under § 1983, a plaintiff must show that: (1) he or she possessed a constitutional right of which he or she was deprived; (2) the city had a policy or custom; (3) said policy or custom amounted to deliberate indifference to his or her constitutional rights; and (4) such policy or custom was the moving force behind the constitutional violation. *See Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

First, the court will note that Plaintiff's identification of a four-item list of material facts that are in dispute does not venture to mention any disputed facts pertaining to *Monell* liability regarding the City and County of San Francisco. *See* Pl.'s Opp. (dkt. 46) at 4. Second, putting that aside, the court cannot overlook the fact that nowhere else in his Response has Plaintiff ventured to offer any argument or evidence in opposition to Defendants' motion for summary judgment as to the *Monell* claim, accordingly, the court is left with no choice but to find that Plaintiff's failure

in this regard amounts to an abandonment of that claim such that summary judgment will properly be entered in favor of the City and County of San Francisco for this reason. It is well established, in this context, that a party abandons an issue when she or he has had a "full and fair opportunity" to express views on the issue, but does not address it in the opposition to the opposing party's motion for summary judgment. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009); *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008); *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005); *Blount v. Morgan Stanley Smith Barney LLC*, 11-cv-02227 CRB, 982 F. Supp. 2d 1077 (N.D. Cal. 2013) ("Because Plaintiff did not respond to these arguments in his opposition [to a motion for summary judgment], the Court deems his claims abandoned."); *see also Raspberry v. Johnson*, 88 F. Supp. 2d 1319, 1327-28 (M.D. Ala. 2000) (noting that plaintiff alleged violations of the Eighth and Fourteenth Amendments in his complaint, but that he "fails to even mention these claims in his Brief, much less elaborate on them. In other words, Plaintiff has, once again, rested on his pleadings and apparently expects the court to formulate an argument that will allow his claims . . . to survive summary judgment . . . [T]he court finds that Plaintiff has abandoned his claims alleged in Count One and, thus, summary judgment is due to be granted as to these claims."). Furthermore, once an abandonment of this sort has occurred, the party generally may not revisit the abandoned claim. *See Ramirez*, 560 F.3d at 1026. Accordingly, summary judgment is **GRANTED** on Claim-1 as to *Monell* liability pertaining to the City and County of San Francisco.

Claim-2 is a state-law claim for negligence directed at Defendants Tauscher, Reyes, and the City and County of San Francisco. *See* SAC (dkt. 27) at 5-6. The essence of this claim is that "Defendants owed Plaintiff a duty of due care not to cause the Plaintiff to be placed in dangerous conditions, and [] this duty was breached by the Defendants when they failed to secure the Plaintiff in a seatbelt, and operated the transport vehicle carrying the Plaintiff in a reckless manner." *See id*. at 5. Plaintiff goes on to allege that as a direct and proximate cause of these acts, he was injured. *Id*. He also alleges that because Defendants Tauscher and Reyes were acting as employees of the City and County of San Francisco at the time of the incident, and because they were acting within the scope and course of their employment and under the direct control and

11

supervision of the City and County of San Francisco, San Francisco [vicariously] is liable to Plaintiff for negligence pursuant to California Government Code § 815.2." SAC (dkt. 27) at 6.

Initially, as mentioned above, Defendants correctly note that "[i]t is undisputed that [Defendant] Reyes did not operate the van in any way or did anything to contribute to Plaintiff's harm." *See* Defs.' Mot. (dkt. 45) at 19; *see also* Pl.'s Deposition Excerpts (dkt. 46-1) at 3-5. Because Defendant Reyes was merely a passenger in the van, and since Plaintiff has not alleged any duty or ability on Defendant Reyes's part to intervene or influence the manner in which Defendant Tauscher was operating the transport van, the court likewise finds that there are no genuine issues of material fact under Claim-2 as to Defendant Reyes. In essence, because there is no evidentiary basis on which a reasonable fact finder could find for Plaintiff, the dispute as to Defendant Reyes's liability is not "genuine." *See Anderson*, 477 U.S. at 248-49 (issues are "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party; and, a dispute is "material" when it could affect the outcome of the suit under governing law). Accordingly, summary judgment is **GRANTED** as to Defendant Reyes for Claim-2.

Defendants' request for summary judgment on Claim-2 for Defendant Tauscher and the City and County of San Francisco is, however, another matter. In this regard, as to Defendant Tauscher's operation of the transport van, Defendants have failed to satisfy their burden to show that the record demonstrates the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. While Defendants simply note that Plaintiff has only advanced "bare allegations" that Defendant Tauscher's allegedly reckless and erratic driving was the direct and proximate cause of a number of injuries he suffered, Plaintiff's sworn declaration and his deposition testimony *are* evidence, and Defendant Tauscher's denial at this juncture only serves to frame what can only be described as genuinely *disputed* issues of material fact that "are manifestly the province of a jury." *See Wall*, 364 F.3d at 1110-11. Accordingly, summary judgment is **DENIED** as to Defendant Tauscher for Claim-2.

As to the municipal defendant's liability under Claim-2, Plaintiff has alleged that the City and County of San Francisco is vicariously liable – pursuant to Cal. Gov. Code § 815.2 – to

Plaintiff for the injuries caused by Defendant Tauscher's allegedly reckless operation of the transport van while acting within the scope and course of his employment. *See* SAC (dkt. 27) at 6. In this regard, Defendants' motion contains only eleven sentences of argument, none of which mention the state-law provision for vicarious liability for municipal defendants in this context; nor do Defendants even venture to include argument to this effect in their reply brief. *See* Defs.' Mot. (dkt. 45) at 18-19; *see also* Defs.' Reply (dkt. 47) at 6. Thus, Defendants appear to have abandoned and waived this issue. *See Desert Protective Council v. United States DOI*, 927 F. Supp. 2d 949, 978 (S.D. Cal. 2013) (Issues that Plaintiffs failed to raise in their motion for summary judgment were deemed abandoned); *see also Mountain States Legal Foundation v. Espy*, 833 F. Supp. 808, 813 n.5 (D. Idaho 1993) (claims not raised in a summary judgment motion should be considered abandoned and waived).

In any event, the court will note that in evaluating a municipal defendant under Claim-2, the court is not bound by the rules set forth in *Monell*, 436 U.S. at 690. Under *Monell*, a municipality may be held liable for a violation of federal law under § 1983 only if it has adopted an illegal or unconstitutional policy or custom (*see id*. at 690-91); however, it cannot be liable for employees' unconstitutional conduct on a theory of *respondeat superior*. *Id*. at 691. California, however, has expressly rejected *Monell* and imposes statutory liability on counties under the doctrine of *respondeat superior* for certain acts of county employees, granting immunity to counties only where the public employee would also be immune. *See* Cal. Gov't Code § 815.2; *see also Scott v. County of Los Angeles*, 27 Cal. App. 4th 125, 139-40 (1994) ("Under Government Code section 815.2, subdivision (a), the County is liable for acts and omissions of its employees under the doctrine of *respondeat superior* to the same extent as a private employer. Under subdivision (b), the County is immune from liability if, and only if, [the employee] is immune.") (emphasis omitted); *White v. County of Orange*, 166 Cal. App. 3d 566, 570, 212 Cal. Rptr. 493 (1985) ("in [state law] governmental tort cases, the rule is liability, [and] immunity is the exception") (citation and internal quotation marks omitted); *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (finding that district court erred in applying *Monell* to a state-law municipal liability claim brought under Cal. Gov't Code § 815.2) (citing *Mary M. v. City of*

*Los Angeles*, 54 Cal. 3d 202, 215, 285 Cal. Rptr. 99, 814 P.2d 1341 (1991) ("[A] governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct."). Accordingly, while simply stating that all "Defendants are entitled to summary judgment on Plaintiff's negligence claim," but because of the failure to present any argument at all in support of summary judgment for the municipal defendant on Claim-2, the City and County of San Francisco's request for summary judgment as to Claim-2 is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (dkt. 45) is **GRANTED in part and DENIED in part** as follows. Defendant Reyes's Motion for Summary Judgment is **GRANTED** as to Claim-1 and Claim-2; Defendant Tauscher's Motion for Summary Judgment is **DENIED** as to Claim-1 and Claim-2; and, the City and County of San Francisco's Motion for Summary Judgment is **GRANTED** as to Claim-1, and **DENIED** as to Claim-2.

**IT IS SO ORDERED.**

Dated: October 5, 2020

ROBERT M. ILLMAN
United States Magistrate Judge